The mother appeals from decrees issued by a judge of the Juvenile Court finding her unfit as a parent and terminating her parental rights to her three children, Quina, Kristi, and Sara. We affirm.
Background. The termination of parental rights trial took place over fifteen days between January and September, 2015. After hearing testimony from twelve witnesses and reviewing seventy-six exhibits, the judge made the following findings of fact, which are amply supported in the record. The children were born in 2006, 2009, and 2010, and were removed from the mother's custody in 2013 by the Department of Children and Families (DCF) after she and her boy friend, Henry (a pseudonym),[3] severely beat the oldest child, Quina. In her defense, the mother maintained that she was merely disciplining Quina by spanking her, but the child displayed obvious bruising on her buttocks and legs and a significant bite mark on her finger. The mother and Henry were both arrested and criminally charged in connection with that beating. The mother eventually admitted she had "lost it" during this incident and that her actions were excessive.
Additionally, the judge determined that the mother had exposed the children to domestic violence and had struggled to maintain secure housing throughout the years the children were in her custody. She failed to pursue available means of intervention for the behavioral and developmental problems of the children, and throughout the course of the investigation, all three children expressed fear of both the mother and Henry. The mother only minimally complied with DCF's service plan aimed toward reunification. Most notably, she failed to comply with the portions of the plan that required her to acknowledge that the methods of discipline she and Henry employed were inappropriate. The judge found that while the mother showed affection toward the children during her visits with them, she had difficulty managing their behavior and contemplated employing an aversive punishment technique despite having the benefit of completing a parenting class. Further, during supervised visits, DCF workers observed the mother inappropriately whispering things to the children, including instructing them not to tell anybody that the mother had physically harmed them.[4]
After a thorough consideration of all the evidence and the requisite factors under G.L.c. 210, § 3, the judge determined that the mother was unfit as a parent and that termination of the mother's parental rights was in the children's best interests, and she accordingly terminated the mother's parental rights. In reaching her decision, the judge made a total of 431 findings of fact. Notwithstanding her conclusion of unfitness, the judge found it to be in the children's best interests to have continued visits with the mother posttermination.
Discussion. On appeal, the mother argues that many of the judge's findings of fact were clearly erroneous, that the judge employed a "selective consideration of the evidence," and that the judge made several evidentiary rulings during trial that prejudiced the mother. We disagree. "In termination of parental rights cases, the trial judge must make specific and detailed findings demonstrating that close attention has been given the evidence. ... While subsidiary findings must be proved by a fair preponderance of the evidence, taken together these findings must prove parental unfitness, which is the 'critical inquiry,' by clear and convincing evidence." Adoption of Leland, 65 Mass. App. Ct. 580, 583 (2006) (quotation omitted). To terminate parental rights, the trial judge must further conclude that there is not "a reasonable likelihood that the parent's unfitness at the time of trial may be only temporary." Adoption of Carlos, 413 Mass. 339, 350 (1992). On review of a trial judge's termination decision, we give the judge great deference and "reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011).
Here, we conclude that the judge's findings of fact were squarely supported in the record, and we reject the mother's argument that several were clearly erroneous. Specifically, the mother challenges the following facts: (1) that the mother had diagnosed mental illness, which stemmed from a report made by the mother to DCF; (2) that in an expert's opinion the mother was predisposed to child abuse; (3) that it took the mother seven months to admit to having physically abused the children; (4) that the mother had not enrolled Quina in school and had neglected the therapeutic and medical needs of the children; (5) that the mother had failed to take a particular recommended parenting course; (6) that there was no evidence that Quina was anemic; (7) that the mother did not inform DCF that she had moved and did not let DCF visit; (8) that Quina had repeatedly told DCF workers that she wanted a new mother and only wanted to visit with the mother; (9) that a witness who was assessing the mother's parenting skills testified that one child spoke about being hit with a belt during each visit; and (10) that the judge relied on stale evidence when discussing the mother's history of involvement in domestic violence and ongoing unstable housing.
We have reviewed the mother's arguments and find record support for the challenged findings. For example, we find no force in the mother's argument that the judge erred in finding that it took her seven months to admit to having abused the children. While there is evidence that she apologized to the children during that seven-month period, admitted to "spanking" the children, and admitted that her severe beating of Quina may have been "excessive," she did not accept that this constituted abuse until admitting to "beating" Quina at a visit seven months after the children's removal. While there is similar conflicting testimony and evidence on many of these issues, we are cognizant that we must "accord substantial deference" to "the judge's assessment of credibility and the weight of the evidence." Adoption of Peggy, 436 Mass. 690, 702 (2001). As such, we conclude there was no clear error.
We further conclude that the termination decision was likewise factually and statutorily supported. The judge's findings were "both specific and detailed, demonstrating, as we require, that close attention was given to the evidence." Adoption of Don, 435 Mass. 158, 165 (2001). As a result, we would only disturb the judge's findings in the event of clear error. Adoption of Arnold, 50 Mass. App. Ct. 743, 750 (2001). As her ultimate conclusion is fully supported by her factual findings, we conclude that the mother has failed to carry that heavy burden.
In her final argument, the mother asserts three evidentiary errors: (1) the admission of testimony from one daughter's therapist; (2) the exclusion of a portion of testimony regarding the mother's own psychological examination; and (3) the admission of hearsay statements by one of the children. As detailed above, there was overwhelming support for the judge's findings of fact and ultimate conclusion of unfitness. Given the magnitude of the record and the judge's thorough findings, we are not persuaded that these evidentiary decisions made by the judge could have impacted the outcome of a fifteen-day trial. Any error is deemed harmless. See Adoption of Sean, 36 Mass. App. Ct. 261, 265 (1994).
The decrees are affirmed. Despite the moral overtones of the statutory term "unfit," the judge's decision was not a moral judgment or a determination that the mother does not love her children. The inquiry instead was whether the mother's deficiencies or limitations "place the child[ren] at serious risk of peril from abuse, neglect, or other activity harmful to the child[ren]." Care & Protection of Bruce, 44 Mass. App. Ct. 758, 761 (1998).
Decrees affirmed.

The mother and Henry married in April, 2014. He is not the father of any of the children.

She also instructed the children to tell people that they would prefer to live with the mother.